# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
# ELKINS

**GEOFFREY W. NEHRENZ**,

    Petitioner,

v.                                       **CIVIL ACTION NO. 2:18-CV-38**
                                                **(BAILEY)**

**DEWAYNE HENDRIX**,

    Respondent.

## ORDER GRANTING MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT AND RESPONSE TO ORDER TO SHOW CAUSE

On this day, the above-styled matter came before this Court for consideration of *pro se* petitioner Geoffrey W. Nehrenz's Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2241 [Doc. 1]. On May 23, 2018, respondent filed a Motion to Dismiss or, in the Alternative, for Summary Judgment and Response to Order to Show Cause [Doc. 14]. This matter has been fully briefed and is now ripe for adjudication. For the reasons that follow, this Court will grant the respondent's Motion and dismiss the petition.

## BACKGROUND

On June 7, 2016, petitioner was sentenced in the Northern District of Ohio to a fifty-five (55) month term of imprisonment for wire fraud and money laundering. Petitioner is currently incarcerated at FCI Morgantown with a projected release date of July 12, 2019.[1]

On April 9, 2018, petitioner filed a Petition for Habeas Corpus Pursuant to 28 U.S.C.

---

[1] *See* https://www.bop.gov/inmateloc/.

1

§ 2241, alleging that FCI Morgantown staff did not conduct an appropriate evaluation regarding petitioner's placement in a Residential Reentry Center ("RRC"), commonly known as a "halfway house." Specifically, petitioner alleges that the staff which conducted the evaluation did not adequately take into consideration his individual circumstances, did not consider a placement of longer than six months, and did not consider the recommendations of the sentencing court. Petitioner also alleges that staff retaliated against him for submitting grievance forms. As relief, petitioner requests that this Court order the Federal Bureau of Prisons ("BOP") to re-evaluate him for RRC placement under the Second Chance Act of 2007, taking into consideration a recommendation by his sentencing court, his family circumstances, and his educational and employment prospects.

On April 30, 2018, Magistrate Judge James E. Seibert conducted a preliminary review of the petition and found that summary dismissal of the same was not warranted [Doc. 9]. Therefore, respondent was ordered to show cause why the writ should not be granted. In response, the respondent filed his Motion to Dismiss or, in the Alternative, for Summary Judgment and Response to Order to Show Cause [Doc. 14]. In sum, the Motion argues the following:

> The Petition should be dismissed under Federal Rule of Civil Procedure 12(b)(1) because 18 U.S.C. § 3625 divests this Court of subject matter jurisdiction to review BOP's determination of Petitioner's RRC placement period under 18 U.S.C. §§ 3621 and 3524(c)(1). Alternatively, the Petition should be dismissed under Rule 12(b)(6) or Rule 56(a) for failure to state a claim for relief, because the BOP appropriately conducted Petitioner's five-factor review for placement, and Petitioner has no protected liberty interest in an RRC placement. Finally, his purported retaliation claim is not properly raised in a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.

[Doc. 15 at 2].

Subsequently, Magistrate Judge Seibert issued a ***Roseboro*** Notice informing the petitioner of his right and obligation to file a response [Doc. 16]. After being granted an extension of time in which to respond [Doc. 20], petitioner responded on July 13, 2018 [Doc. 23]. In his Response, petitioner reasserts his argument that "[t]he BOP did not consider the Petitioner's judicial recommendation in their Second Chance Act evaluation," [Doc. 23 at 3], argues that "[t]he BOP abused its discretion when recommending and placing the Petitioner in a RRC," [Id. at 5], and provides documentation which he alleges supports his claims.

## **STANDARDS OF REVIEW**

### **I. Rule 56 Motion for Summary Judgment**

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see ***Celotex Corp. v. Catrett***, 477 U.S. 317, 322 (1986). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 248 (1986). Thus, the Court must conduct "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." ***Id.*** at 250.

Additionally, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." ***Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.***, 475 U.S. 574, 586 (1986). That is, once the movant has

met its burden to show absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial. Fed. R. Civ. P. 56(c); **Celotex Corp.**, 477 U.S. at 323–25; **Anderson**, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id*. at 249 (citations omitted).

**II. Rule 12(b)(6) Motion to Dismiss**

In reviewing the sufficiency of a complaint under Federal Rule of Civil Procedure 12(b)(6), a district court must accept the factual allegations in the complaint as true. **Zak v. Chelsea**, 780 F.3d 597, 601 (4th Cir. 2015) (citing **Matrix Capital Mgmt. Fund, LP v. Bearing Point, Inc.**, 576 F.3d 172, 176 (4th Cir. 2009)). While a complaint does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. **Bell Atl. Corp. v. Twombly**, 550 U.S. 544, 555 (2007). Indeed, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." **Papasan v. Allain**, 478 U.S. 265, 286 (1986).

A "complaint must be dismissed if it does not allege 'enough facts to state a claim to relief that is *plausible* on its face.'" **Giarratano v. Johnson**, 521 F.3d 298, 302 (4th Cir. 2008) (quoting **Twombly**, 550 U.S. at 544 (emphasis added)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." **Ashcroft v. Iqbal**, 556 U.S. 662, 678 (2009). This requires "more than a sheer possibility that a defendant has acted unlawfully." *Id*. However, when reviewing the sufficiency of a complaint, a court may also consider

4

"documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). A court may consider documents attached to a motion to dismiss when they are "integral to and explicitly relied on in the complaint and . . . the plaintiffs do not challenge [their] authenticity." *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004).

## DISCUSSION

On April 9, 2008, the Second Chance Act of 2007, Pub.L.No. 110-99, was enacted. It amended 18 U.S.C. § 3624 and provides that the Director of the BOP shall "to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months) under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community." 18 U.S.C. § 3624(c)(1). The statute provides that those conditions "may include a community correctional facility," id., commonly known as an RRC or "halfway house." The statute further provides that the decision to confine a prisoner in a "halfway house" shall be made on an individual basis and in light of several factors, most of which are identified in 18 U.S.C. § 3621(b). See *Miller v. Whitehead*, 527 F.3d 752 (8th Cir. 2008) (BOP may consider factors in addition to those identified in § 3621(b)). The factors identified in 18 U.S.C. § 3621(b) are as follows:

    (1) the resources of the facility contemplated;
    (2) the nature and circumstances of the offense;
    (3) the history and characteristics of the prisoner;
    (4) any statement by the court that imposed the sentence—
       (A) concerning the purposes for which the sentence to imprisonment was

5

>     determined to be warranted; or
>     (B) recommending a type of penal or correctional facility as appropriate;
>     and
> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

18 U.S.C. § 3621(b).

Thus, federal regulations dictate that a federal inmate may be released into an RRC for a maximum of twelve (12) months. 28 C.F.R. §§ 570.20–21. However, federal regulations do not establish any minimum amount of time that a federal inmate must spend in an RRC. Id. Similarly, federal regulations do not mandate that federal prisoners must be released to an RRC at all. Id. The BOP has exclusive discretion to determine whether, and for how long, to release an inmate to an RRC. **Syrek v. Phillips**, 2008 WL 4335494, at *3 n.1 (N.D. W.Va. Sept. 17, 2008) (Stamp, J.) (citing **Woodall v. Federal Bureau of Prisons**, 432 F.3d 235, 251 (3d Cir. 2005)); **Pennavaria v. Gutierrez**, 2008 WL 619197, at *3 (N.D. W.Va. Mar. 4, 2008) (Stamp, J.).

Further, Congress has specifically excluded 18 U.S.C. §§ 3621, 3624 from judicial review under the Administrative Procedures Act ("APA"). *See* 18 U.S.C. § 3625. Thus, "any substantive decision by the BOP with regard to [a] petitioner's eligibility for RRC placement, or the length of time in an RRC, is not reviewable by this Court." **Newman v. Ziegler**, 2010 WL 11520048, at *3 (N.D. W.Va. Sept. 7, 2010), *report and recommendation adopted*, 2010 WL 11530383 (N.D. W.Va. Dec. 20, 2010) (Keeley, J.), *aff'd*, 425 Fed. App'x 255 (4th Cir. 2011) (citing **Lyle v. Sivley**, 805 F.Supp. 755, 760 (D. Ariz. 1992)). "However, even where judicial review under the APA is specifically excluded by statute, the court may still review whether there is clear evidence of unconstitutional conduct or evidence that the agency acted

outside the scope of its authority." *Id.* (citing **Webster v. Doe**, 486 U.S. 592 (1988); **Turner v. Safley**, 482 U.S. 78, 84 (1987); **Procunier v. Martinez**, 416 U.S. 396, 405 (1974); **Davis v. Beeler**, 966 F.Supp. 483, 489 (E.D. Ky. 1997)).

It is well-established that an inmate has no constitutional right to be confined to a particular institution, **Meachum v. Fano**, 427 U.S. 215, 223 (1976), nor any "justifiable expectation" that he will be confined in a particular prison. **Olim v. Waukinekona**, 461 U.S. 238 (1983). Thus, because the petitioner has no protected liberty interest in being placed in an RRC prior to his release, and the decision whether to make such placement is clearly a matter of prison management within the knowledge and expertise of BOP officials, this Court cannot intervene in that decision unless a clear constitutional violation occurred. For the reasons discussed below, this Court has determined that no such violation has occurred.

As previously noted, when evaluating an inmate for RRC placement, BOP staff must make referral recommendations based upon the five factors enumerated in 18 U.S.C. § 3621(b), as amended by the Second Chance Act. In support of respondent's Motion to Dismiss or, in the Alternative, for Summary Judgment, respondent states as follows:

> On June 27, 2017, Petitioner was reviewed for potential RRC placement by his Unit Team. [Ex. 1, Decl. of T.R. Titchenell] at ¶ 11. Subsequently, on September 7, 2017, Petitioner's Unit Team submitted an Institutional Referral for RRC Placement to the Residential Reentry Manager ("RRM") for the Northern District of Ohio. Id. His Unit Team recommended a placement of 180 days, resulting in a recommended date of January 14, 2019, for Petitioner to transfer to an RRC. Id. In recommending a 180-day placement, Petitioner's Unit Team considered each of the five factors enumerated in 18 U.S.C. § 3621(b). Id. at ¶ 12. His Unit Team considered that:
>
> (1) there was an RRC in his release area;
> (2) the nature and circumstance of his offenses—money laundering and wire fraud—do not preclude eligibility for RRC placement;

7

> (3) [petitioner] has a high school diploma, an accounting degree, a Master's degree in Business Administration, and has been previously employed in several positions, including: service manager at Royal Family Motors, finance manager at Collection Auto group, car sales, miscellaneous accounting/finance positions, and some counseling work;
> (4) the sentencing court made no pertinent statement in the Judgment and Commitment order; and
> (5) no pertinent policy has been issued by the U.S. Sentencing Commission.
>
> Although the Unit Team recommended 180 days, the RRM was only able to provide a 122-day placement, resulting in a transfer date of March 13, 2019. Id. at ¶ 16. RRC facilities are designed to assist federal inmates to reintegrate into the community. Id. at ¶ 14. However, these individual facilities are not owned, operated, or controlled by the BOP or federal government generally. Id. Rather, the BOP contracts with these privately-owned and run facilities to accommodate federal inmates as necessary and appropriate. Id. As a practical matter, each individual RRC is only equipped to accommodate a specific number of residents at any given time due to limited bed space availability. Id. at ¶ 15. Additionally, each RRC only has a finite amount of financial resources to support residents at any given time. Id.
>
> Petitioner's 122-day placement ensures that he has adequate time to complete the remaining transitional drug abuse treatment portion of the RDAP program in an RRC. Id. at ¶ 16. This placement ensures that he will be able to receive the benefit of a one (1) year reduction in his sentence pursuant to 18 U.S.C. § 3621(e). Id.

[Doc. 15 at 5–6].

Thus, as supported by the Institutional Referral for RRC Placement Form included with respondent's Motion [Doc. 15-1 at 25], the petitioner's Unit Team complied with the Second Chance Act by applying the criteria of 18 U.S.C. § 3621 to the specific facts of his case. Therefore, the BOP did all that was required, and their decision was not outside the scope of their authority. This Court agrees with respondent that "[a]lthough reasonable minds may differ about the time it will take Petitioner to fully integrate into the community, Bureau staff exercised their professional judgment in recommending a 180-day placement. This analysis was

8

anything but arbitrary and capricious." [Doc. 15 at 11].

This Court finds petitioner's allegations to the contrary to be unavailing. First, petitioner claims that the BOP failed to consider a recommendation by his sentencing judge that he serve an extended period in an RRC in an effort to begin paying his restitution obligations. However, as noted by petitioner's Unit Team, petitioner's Judgment and Commitment Order ("J&C") contained no pertinent statement from the sentencing court. In petitioner's J&C, the sentencing court recommended petitioner "be *considered* for eligible provisions of the Second Chance Act" [Doc. 15-1 at 14] (emphasis added). There is no mention of any specific time period the sentencing court found appropriate or any specific recommendation that the petitioner should serve an extended period in an RRC in order to begin working as soon as possible. The J&C simply recommended that petitioner be considered for RRC placement in accordance with the Second Chance Act, which is required of the BOP in every instance, and which is precisely what was done here.[2]

Petitioner also challenges the RRM's approval for a 122-day placement in an RRC, despite being referred for a 180-day placement, and the RRM's explanation that such a decision was made based on administrative concerns, such as bed space limitations. Petitioner submitted an affidavit from his prospective employer that states the prospective

---

[2] Petitioner contends that an attached excerpt from his sentencing hearing transcript, combined with an attached letter from his counsel at sentencing, make it clear that the sentencing court recommended petitioner serve extended time in an RRC in order to begin working and paying restitution as soon as possible. This Court does not interpret these documents in precisely the same way as the petitioner. Regardless, however, even if this was the sentencing court's intended recommendation, the extent of that intention was not discernable from the J&C, as just described, which is all BOP staff would have to determine any recommendation from the sentencing court.

9

employer contacted the "Admissions Administrator for all of the Ohio Oriana House locations on 6/27/2018 . . . [who told him that] there are many federally contracted beds available beginning in August 2018 . . . and going forward" [Doc. 23-2 at 2]. Thus, petitioner argues the explanation for the shorter RRC placement, that there are bed space limitations, "simply is not true" [Doc. 23 at 6].

This Court finds petitioner's argument to be unavailing. Even if it were true that space was available when the prospective employer made his inquiry on June 27, 2018, that does not mean the BOP was being untruthful when the placement decision was made in September 2017. Further, bed space is also not the only administrative concern that factors into final placement decisions.

At bottom, although petitioner disagrees with the outcome, there is no doubt that petitioner received an individualized assessment for RRC placement using the factors contained in 18 U.S.C. § 3621(b). These five factors are specifically noted on petitioner's RRC referral form [Doc. 15-1 at 25] and there is also a ten-page assessment that examines all areas of petitioner's background and current circumstances [Id. at 26–35]. See *Miller*, 527 F.3d 752 (BOP may consider factors in addition to those identified in § 3621(b)).

To the extent petitioner's personal situation has changed since the assessment was conducted, such as his alleged breakdown in family ties, or administrative concerns have changed, such as the alleged increase in available space, that has no effect on the validity of the assessment that was conducted. While it would be ideal for the BOP to be able to reevaluate prisoners for RRC placement every time situations change, such an approach would seem impractical, and "[t]he BOP is uniquely qualified, in the first instance, to make

decisions as to the propriety, as well as the timing, of RRC placement determinations."
*O'Hara v. Rios*, 2009 WL 3164724, at *7 (D. Minn. Sept. 28, 2009) (citing *Hosna v. Groose*, 80 F.3d 298, 303 (8th Cir. 1996)); see *Miller*, 527 F.3d at 757 (finding that inmates are not "entitled to a full-blown analysis of a request to transfer, involving individualized consideration of all five factors in § 3621(b), whenever the inmate chooses to make such a request . . . [as that] would require the BOP to consider daily requests for transfer to an RRC from every inmate in a facility"); *Fisher v. Morrison*, 2006 WL 1716135, at *1 (D. Minn. June 20, 2006) (noting that the court is aware of no authority requiring "the BOP to conduct [its final RRC] eligibility review . . . on demand by the prisoner"), *aff'd*, 258 Fed. App'x 73 (8th Cir. 2007).

More importantly, it is not for this Court to direct the BOP how to execute that which the legislature has entrusted to it in its discretion. The role of this Court is to review determinations that have been made, when challenged, to ensure such determinations are constitutional and within the authority given to the BOP by Congress. This Court's role is not to second guess or order the reevaluation of previous evaluations that were properly conducted according to the requirements of the Second Chance Act. See *Lopez v. Apker*, 2005 WL 2207062, at *5 (S.D.N.Y. Sept. 9, 2005) ("It is not the role of this Court to second-guess BOP[] determination[s] . . . [regarding] individualized placements . . . or to substitute its judgment for that of BOP.") (citing *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984)). Further, to the extent the petitioner alleges his Unit Team acted in bad faith by not considering every factor regarding petitioner's situation—such as his alleged breakdown in family support or the effect a shorter placement would have on his employment prospects—"[w]hatever the truth of these claims, the Court lacks the authority to direct the

11

BOP to consider specific characteristics for each prisoner who is reviewed for RRC placement; the Court is limited to asking whether the BOP used the five factors and cannot engage in a review of the substantive merits or thoroughness of the BOP's analysis." **Garrison v. Stansberry**, 2009 WL 1160115, at *5 (E.D. Va. Apr. 29, 2009); see **Mueses v. Terrell**, 2010 WL 4365520, at *4 (E.D.N.Y. Oct. 27, 2010) ("As the Unit Team's recommendation considered the mandated statutory factors listed in 18 U.S.C. § 3621(b), the Court may not disturb the recommendation, especially in light of the broad discretion the BOP was given by Congress.").

Therefore, in sum, the petitioner's Unit Team made its RRC placement recommendation on an individual basis, considering the factors listed in 18 U.S.C. § 3621(b), as required by the Second Chance Act. While this Court commends petitioner for seeking advancement through education and employment opportunities in order to reintegrate into society and repay his restitution obligation, "[t]he fact that the petitioner was not recommended for [an extended] placement so that he could begin work does not establish that the BOP was either derelict in its duties or wrong." **Zuspan v. O'Brien**, 2013 WL 6806674, at *11 (N.D. W.Va. Dec. 20, 2013) (Keeley, J.). Nor is there evidence that the determination was arbitrary, capricious, or an abuse of discretion. Therefore, as the petitioner cannot show that BOP officials violated the Second Chance Act, his petition should be dismissed.

Finally, with regard to petitioner's alleged retaliation claim, this Court tends to agree with respondent that such claim, as framed, is more properly asserted in a **Bivens** action rather than a § 2241 petition. See **Wilkerson v. Dotson**, 544 U.S. 74, 82 (2005) (discussing which prisoner claims properly may be brought in a habeas petition as opposed to a civil

rights complaint, and making clear that habeas petitions are only appropriate where "success in [the] action would necessarily demonstrate the invalidity of confinement or its duration"). However, even assuming, *arguendo,* that it may be a viable claim, petitioner has not offered sufficient evidence to survive respondent's Motion.

"A plaintiff alleging that government officials retaliated against [him] in violation of [his] constitutional rights must demonstrate . . . that [he] suffered some adversity in response to [his] exercise of protected rights." **Am. Civil Liberties Union of Md., Inc. v. Wicomico Cty.**, 999 F.2d 780, 785 (4th Cir. 1993) (citing **Huang v. Bd. of Governors of Univ. of N.C.**, 902 F.2d 1134, 1140 (4th Cir. 1990)). Here, petitioner has made no such showing. While petitioner may be "worried about retaliation" and "potentially" losing the year off his sentence earned for successful RDAP completion, petitioner has not *actually* lost any time he has earned or suffered any other actual adverse retaliation. "One cannot recover from another because of a fear they might retaliate. There must be actual retaliation, unless the fear caused [petitioner] not to exercise his rights." **Burt v. Crawford**, 2006 WL 2443670, at *8 (D. Nev. Aug. 22, 2006).

Petitioner states that he "want[s] to be able to exercise [his] rights to file a grievance . . . without having to worry about being bullied, intimidated, threatened, and/or punished by staff for doing so" [Doc. 1-1 at 5]. However, it is clear any fear petitioner had did not interfere with his desire or ability to file grievances or access the courts, as petitioner successfully exhausted his administrative remedies prior to filing his petition, filed a petition and response to the instant Motion with this Court, and has never alleged this fear actually prevented him from exercising any right. Further, petitioner's allegation that he was once subject to "verbal

13

assault" does not state a viable claim of retaliation, as mere verbal harassment does not give rise to a constitutional violation. See **Wagner v. Wheeler**, 13 F.3d 86, 92–93 (4th Cir. 1993); **Richardson v. Smith**, 2016 WL 237125, at *3 (N.D. W.Va. Jan. 20, 2016) (Bailey, J.).

Thus, petitioner simply asserts bald allegations regarding fear of retaliation without any assertion, much less evidence, he suffered any actual adverse action, or that such fear chilled his exercise of any right. As such, petitioner's retaliation claim cannot survive respondent's Motion.

## **CONCLUSION**

Upon careful review of the above, it is the opinion of this Court that the respondent's Motion to Dismiss or, in the Alternative, for Summary Judgment and Response to Order to Show Cause **[Doc. 14]** should be, and is, hereby **GRANTED**. Accordingly, this Court **ORDERS** that the § 2241 petition **[Doc. 1]** be **DISMISSED WITH PREJUDICE**. This Court further **DIRECTS** the Clerk to enter judgment in favor of the respondent and to **STRIKE** this case from the active docket of this Court.

As a final matter, upon an independent review of the record, this Court hereby **DENIES** a certificate of appealability, finding that petitioner has failed to make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to any counsel of record herein and to mail a copy to the *pro se* petitioner.

**DATED:** November 1, 2018.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE